UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

**In re**                   :       **Chapter 11**
                  :

**OSCIENT PHARMACEUTICALS**   :       **Case Nos. 09-16576**
**CORPORATION, *et al.*,**[1]         :
                  :       **(Jointly Administered)**

**Debtors.**              :
                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF GUARDIAN II ACQUISITION CORPORATION FOR AN ORDER
PURSUANT TO  SECTIONS 105, 361, 362, AND 363 OF THE BANKRUPTCY CODE
(A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (B) GRANTING
ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND
(D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

              Guardian II Acquisition Corporation ("Guardian" and collectively with its

affiliated debtor and debtor in possession, Oscient Pharmaceuticals Corporation ("Oscient"), the

"Debtors"), hereby submits this motion (the "Motion") for an Order (the "Interim Order")

pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code (as defined below)

(i) authorizing Guardian's use of cash collateral, (ii) granting adequate protection, (iii) modifying

the automatic stay, and (iv) scheduling a final hearing.  In support of the Motion, Guardian

submits the Declaration of Philippe M. Maitre in Support of Chapter 11 Petitions and First Day

Motions and Applications, sworn to on July 13, 2009 (the "Maitre Declaration"), and

respectfully represents and sets forth as follows:

---

[1] The Debtors in these cares are Oscient Pharmaceuticals Corporation (Case No. 09-16576) and Guardian II
Acquisition Corporation (Case No. 09-16579).

### Summary of the Relief Requested

1.      By the Motion, Guardian requests, pursuant to sections 105, 361, 362, and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and MLRB 4001-2 (a) authority to (i) use Cash Collateral,[2] and (ii) grant adequate protection to Paul Royalty and the Second Lien Agent (each as defined below), (b) modification of the automatic stay, and (c) the scheduling of a final hearing (the "Final Hearing") thereon. A proposed Interim Order is attached hereto as Exhibit A.

2.      Subject to Court approval pursuant to the Motion Of The Debtors For An Order Approving Management Services Agreement And Authorizing Each Of The Debtors To Perform Their Obligations Thereunder, Oscient and Guardian have entered into a Management Services Agreement to provide Guardian with services necessary to operate its business and to provide for payment to Oscient for these services. The Interim Order permits use of cash collateral in accordance with budgets for Guardian and Oscient so that services under the Management Services Agreement may be provided and the value of Guardian's assets may be preserved.

3.      In accordance with Bankruptcy Rule 4001 and MLBR 4001-2, below is a summary of the terms of the proposed Interim Order. Terms that vary from the requirements of MLBR 4001-2(c) are highlighted in bold.

(a) Parties with an Interest in the Cash Collateral. The parties with an interest in the Cash Collateral are: (a) Paul Royalty Fund Holdings II ("Paul Royalty") under the Revenue Interests Assignment Agreement ("RIAA") and the Paul Royalty Note; and (b) U.S. Bank National Association, as trustee and collateral agent (in such capacity, the "Second Lien Agent") for the

---

[2]      Unless stated otherwise, all capitalized terms not defined in this summary will have the meaning ascribed to such term in the proposed Interim Order.

Prepetition Second Lien Noteholders.

(b) <u>Authorization to Use Cash Collateral</u>.

(i)  Subject to the terms and conditions of the Interim Order, and in accordance with the Guardian Budget, the Interim Order will authorize Guardian to use Cash Collateral for the period (the "<u>Specified Period</u>") from the Petition Date through the date which is the earliest to occur of (a) the expiration of the Remedies Notice Period, (b) 11:59 p.m. (Eastern time) on September 15, 2009, and (c) the consummation of a chapter 11 plan of reorganization.

(ii) Except as otherwise expressly provided in the Interim Order, Cash Collateral may be used during the Specified Period, at the times, and for the purposes identified in the cash collateral budget attached to the Interim Order as Exhibit A (or as amended as provided in the Interim Order) (the "<u>Guardian Budget</u>"), with amounts disbursed to Oscient for the purposes set forth in the budget attached to the Interim Order as Exhibit B (the "<u>Oscient Budget</u>") under the headings "General Expenses Pool Shared 84% - 16%" and "GII Exclusive Expenses" (collectively, the "<u>Guardian Related Expenses</u>"); <u>provided</u>, that Guardian will be authorized to use Cash Collateral to pay all fees and expenses of Professionals authorized to be paid by orders of the Court and applicable law, subject to the limitations in paragraph 16 of the Interim Order, and such payments will be deemed to be consistent with and in accordance with the Guardian Budget; <u>provided</u> <u>further</u>, that Paul Royalty may, on five business days notice to Guardian, terminate its consent to use Cash Collateral if (a) for any week in the Oscient Budget, the actual amount for each line item for expenditures that are Guardian Related Expenses exceeds the budgeted amount by more than 20% (or such greater percentage as approved by Paul Royalty, in writing, in its sole discretion) and (b) the actual aggregate amount for each line item of Guardian Related Expenses for each week does not, on an aggregate cumulative basis measured weekly as of the close of business on each Friday of each week, exceed 110% of the aggregate amount so budgeted; <u>provided</u> <u>further</u>, <u>however</u>, that during the Remedies Notice Period, Guardian may use Cash Collateral (i) in accordance with the terms and provisions of the Guardian Budget, solely to make payments to Oscient in an amount up to the amount necessary for Oscient to meet ordinary course payroll obligations and pay bonus, severance and incentive compensation approved by the Court, (ii) to make payments to Oscient in an amount up to the amount necessary for Oscient to pay expenses determined by Guardian in good faith to be critical to the preservation of Guardian and its estate and as set forth in the Guardian Budget and Oscient Budget, and (iii) to pay Professionals, to the extent of the Carve Out as described below.  The Interim Order requires all Cash

Collateral use to be strictly in accordance with the terms of the Guardian Budget, subject to the terms and conditions discussed above.

(c) <u>Adequate Protection</u>.  The Interim Order provides that, as adequate protection, Paul Royalty and the Second Lien Agent will receive the following (collectively, the "<u>Proposed Adequate Protection</u>"):

(i) <u>Replacement Liens</u>.

1.  Paul Royalty will be granted replacement liens (the "<u>Senior Adequate Protection Liens</u>") on any and all presently owned and hereafter acquired personal property, real property, and all other assets of Guardian, together with any proceeds thereof (collectively, the "<u>Collateral</u>") to the extent of any diminution in value of Paul Royalty's security interests, having the priority set forth in the Interim Order. **For purposes of the Interim Order, "Collateral" will include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof but will not include other causes of action under chapter 5 of the Bankruptcy Code.**

2.  The Second Lien Agent will be granted replacement liens (the "<u>Junior Adequate Protection Liens</u>") on the Collateral, to the extent of any diminution in value of the Second Lien Agent's prepetition security interests, having the priority set forth in the Interim Order.

3.  The Senior Adequate Protection Liens will be junior only to:  (A) the Carve Out; (B) the Prepetition Paul Royalty First Liens, and (C) the Permitted Prior Encumbrances.  The Senior Adequate Protection Liens will otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

4.  The Junior Adequate Protection Liens will be junior only to:  (A) the Carve Out; (B) the Prepetition Paul Royalty First Liens; (C) the Senior Adequate Protection Liens; (D) the Prepetition Second Liens; and (E) the Permitted Prior Encumbrances.  The Junior Adequate Protection Liens will otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

5.  Subject to the Challenge Period (defined below), the Adequate Protection Liens will not be subject to sections **506(c) (effective upon entry of the Final Order)** 510, **549,** or 550 of the Bankruptcy Code.

(ii) <u>Superpriority Claim</u>.

1.  The Interim Order will grant Paul Royalty, pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority

administrative expense claim (the "<u>Senior Adequate Protection Superpriority Claim</u>").

2. The Interim Order will grant the Second Lien Agent, pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "<u>Junior Adequate Protection Superpriority Claim</u>", and together with the Senior Adequate Protection Superpriority Claim, the "<u>Adequate Protection Superpriority Claims</u>").

3. The Senior Adequate Protection Superpriority Claim will be junior only to the Carve Out.  The Junior Adequate Protection Superpriority Claim will be junior only to the Carve Out and the Senior Adequate Protection Superpriority Claim; <u>provided</u>, <u>however</u>, that unless otherwise agreed by Paul Royalty in its sole discretion, no Junior Adequate Protection Superpriority Claim will receive any distribution unless and until all Prepetition Paul Royalty First Lien Obligations and all administrative expenses held by Paul Royalty are indefeasibly paid in full in cash.

4. Except for the Carve Out, the Adequate Protection Superpriority Claims will have priority over all administrative expense claims and unsecured claims against Guardian or its estate, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), **506(c)**, 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

(iii) <u>Adequate Protection Payments and Protections</u>.

1. The Interim Order will authorize and direct Guardian to provide additional adequate protection to Paul Royalty (the "<u>Senior Adequate Protection Payments</u>"), in the form of: (i) ongoing deposit of the proceeds of sales of ANTARA into the deposit account maintained by Guardian subject to a control agreement in favor of Paul Royalty; (ii) on a weekly basis, payment of the Applicable Percentage (as defined in the RIAA) in respect of Net Revenues (as defined in the RIAA) of ANTARA[3]; and (iii) ongoing payment of the reasonable fees, costs and expenses of Paul Royalty's legal counsel, Wilmer Cutler Pickering Hale and Dorr LLP. and financial advisor, Houlihan Lokey Howard & Zukin Capital, Inc.; <u>provided</u>, <u>however</u>, that Guardian will not make any Senior Adequate Protection Payment unless it would, after making such payment, continue to hold at least $500,000 in Cash Collateral.

---

[3]     The Applicable Percentage under the RIAA is currently nine percent (9%).

2. In additional, Guardian shall provide continued maintenance and insurance of the Prepetition Collateral in the amounts and for the risks, and by the entities, required under the Paul Royalty Documents.

3. If the Court determines the value of Paul Royalty's interests in the Prepetition Collateral do not exceed the Prepetition Paul Royalty First Lien Obligations, as determined pursuant to section 506 of the Bankruptcy Code, then, subject to the reservation of rights set forth in Paragraph 8 of the Interim Order and any proceeding brought with respect thereto, all Senior Adequate Protection Payments will be applied against (and will reduce) the principal balance of the Paul Royalty Note.

4. **Paul Royalty shall not be required to comply with the U.S. Trustee fee guidelines for the payment of fees and expenses authorized by the Interim Order.**

(d) Carve-out.

(i) The Interim Order provides for a "Carve Out" for the following expenses: (i) amounts payable by Guardian to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/ Clerk Fees"); (ii) allowed, unpaid fees and expenses allocable to Guardian of attorneys, accountants, financial advisors and other professionals (collectively, the "Professionals") retained by final order of the Court (which order has not been vacated, stayed or appealed) by Guardian and any Statutory Committee under sections 327 and 1103 of the Bankruptcy Code ("Priority Professional Expenses" and together with the UST/Clerk Fees, the "Carve Out"); provided however, that the Priority Professional Expenses incurred for work performed during the period after the Specified Period will not exceed $500,000; (iii) any fees of Broadpoint Capital, Inc. ("Broadpoint") payable in connection with any sale of assets or other transaction in accordance with the Engagement Letter allocable to Guardian; and (iv) a break up fee not to exceed $300,000, if and to the extent payable and as allocable to Guardian, with respect to the sale of ANTARA.

(ii) The Interim Order provides that Paul Royalty consents to and agrees to support (i) the terms and conditions of the Engagement Letter, dated June 11, 2009, between Oscient, Guardian, and Broadpoint (the "Engagement Letter"), and (ii) any subsequent application to the Court which requests the approval of the terms and conditions specified in the Engagement Letter.

(e) Events of Default.

(i) The Interim Order provides that the occurrence of any of the following events, unless waived by Paul Royalty in writing, will constitute an event of default (collectively, the "Events of Default"):

1. the failure by Guardian to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order;

2. the obtaining after the Petition Date of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of Paul Royalty, or (ii) entitled to priority administrative status which is equal or senior to that granted to Paul Royalty in the Interim Order;

3. **Guardian will assert that any lien or security interest purported to be created under the Prepetition Documents will cease to be a valid and perfected lien on or security interest in any Collateral, with the priority required by the Prepetition Documents or the Interim Order;**

4. **the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of Guardian**;

5. Guardian's return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code;

6. reversal, vacatur, or modification (without the express prior written consent of Paul Royalty, each in its sole discretion) of the Interim Order, other than in accordance with the Final Order;

7. dismissal of the Case or conversion of the Case to a chapter 7 case, or appointment of a chapter 11 trustee, examiner with enlarged powers, or other responsible person;

8. any intentional misrepresentation of a material fact made after the Petition Date by Guardian or their agents to Paul Royalty about the sale process for ANTARA, Guardian's financial condition, or any of

them, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

9. a default by Guardian after the Petition Date in reporting financial information as and when required by the Interim Order, if such default will remain uncured three business days after the earlier of (i) Guardian's receipt of written notice from Paul Royalty of such default or (ii) Guardian's knowledge of default under this subparagraph; or

10. the granting of any motion providing for reconsideration of this Interim Order.

(f) <u>Rights and Remedies Upon Event of Default</u>.

(i) The Interim Order provides that, immediately upon the occurrence and during the continuation of an Event of Default, Paul Royalty may declare a termination, reduction, or restriction of the ability of Guardian to use any Cash Collateral, except for the limited use of Cash Collateral provided in paragraph 3 of the Interim Order during the Remedies Notice Period and for the Carve Out (any such declaration, a "<u>Termination Declaration</u>").

(ii) On the Termination Declaration Date, Guardian's right to use Cash Collateral will automatically cease, except as provided in paragraph 3 of the Interim Order during the Remedies Notice Period and in connection with the Carve Out.

(iii) **Within five (5) business days after the Termination Declaration Date (the "<u>Remedies Notice Period</u>"), Guardian will be entitled to seek an emergency hearing with the Court for the further use of Cash Collateral.**

(iv) **Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, Guardian shall no longer have the right to use or seek to use Cash Collateral, and Paul Royalty shall be permitted to exercise all remedies set forth herein, in the Paul Royalty Documents, as applicable, and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to Paul Royalty with respect thereto pursuant to the Paul Royalty Documents, or the Interim Order, as applicable.**

(g) <u>Guardian's Stipulations</u>.  Subject to the provisions of paragraph 16 of the Interim Order, Guardian acknowledges and agrees in the Interim Order that:

(i) **as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected;**

(ii) **as of the Petition Date, the Prepetition Paul Royalty First Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Paul Royalty Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Paul Royalty First Liens as of the Petition Date, the "<u>Permitted Prior Encumbrances</u>");**

(iii) as of the Petition Date, the Prepetition Second Liens were junior and subordinate to the Prepetition Paul Royalty First Liens and Permitted Prior Encumbrances;

(iv) **the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of Guardian;**

(v) **no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens, the Prepetition Paul Royalty First Lien Obligations, or the Prepetition Second Lien Obligations exist, and no portion of the Prepetition Liens, the Prepetition Paul Royalty First Lien Obligations or Prepetition Second Lien Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;**

(vi) **Guardian and its estate has no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against Paul Royalty, the Second Lien Agent, the Prepetition Second Lien Noteholders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to their agreements with the Debtors;**

(vii) **as of the Petition Date, the Prepetition Paul Royalty First Lien Obligations are allowed claims against Guardian's estate in an amount of not less than [$84,170,381] together with accrued and unpaid interest, fees (including, without limitation, reasonable attorneys' fees, financial advisory fees and related expenses), and any and all other reasonable and allowed charges of whatever nature that**

may be owing in respect of such Prepetition Paul Royalty First Lien
Obligations, which allowed claims are secured claims pursuant to
section 506 of the Bankruptcy Code to the extent of the Prepetition
Paul Royalty First Liens  over the Prepetition Collateral;

(viii)      any payments made by Guardian on account of the Prepetition
Paul Royalty First Lien Obligations to or for the benefit of Paul
Royalty prior to the Petition Date were on account of amounts in
respect of which Paul Royalty was secured, were payments out of the
Prepetition Collateral, and such payments did not diminish any
property otherwise available for distribution to unsecured creditors.

(ix) all of Guardian's cash, including the cash in its deposit accounts on the
Petition Date, wherever located, constitutes the Cash Collateral of Paul
Royalty and the Second Lien Agent.

(h) <u>Bar of Challenges and Claims</u>.  The Interim Order provides that:

(i) a party, including any Statutory Committee, if appointed, must
commence a contested matter or adversary proceeding raising any
objection or challenge to any such provisions or any other waivers,
releases, affirmations and other stipulations set forth herein, or
asserting any such claim against Paul Royalty or the Second Lien
Agent (each, a "<u>Challenge</u>") within the earlier of:  (i) with respect to
any Statutory Committee, sixty (60) calendar days after the
appointment of such Statutory Committee, and (ii) with respect to
other parties in interest (including any chapter 7 trustee) with
requisite standing other than the Debtors or any Statutory
Committee, seventy-five (75) calendar days following the date of entry
of the Interim Order (together, the "<u>Challenge Period</u>"), <u>provided</u>,
<u>however</u>, that the Court may resolve any such issues earlier than the
expiration of the Challenge Period through a contested matter or
adversary proceeding brought by any party in interest.

(ii) Upon the expiration of the Challenge Period (the "<u>Challenge Period
Termination Date</u>"), other than with respect to those Challenges filed
with the Court that remain pending or that have been previously
resolved by Order of the Court:  (A) any and all such Challenges by
any party (including, without limitation, any Statutory Committee,
any chapter 11 trustee, and/or any examiner or other estate
representative appointed in the Case, and any chapter 7 trustee
and/or examiner or other estate representative appointed in any
Successor Case) shall be deemed to be forever waived, released, and
barred, (B) all of the Guardian's Stipulations, waivers, releases,
affirmations, and other stipulations set forth in the Interim Order
shall be of full force and effect and forever binding upon the

**Guardian, Guardian's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Case and any Successor Cases, and (C) the claims of Paul Royalty shall be deemed to be allowed, secured claims pursuant to section 506 of the Bankruptcy Code to the extent of the Prepetition Paul Royalty First Liens over the Prepetition Collateral.**

<b><u>Jurisdiction and Venue</u></b>

4.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code.

<b><u>Background</u></b>

5.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtors to continue to operate their businesses and manage their properties as debtors in possession.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

6.      The Debtors' capital structure and the facts and circumstances surrounding the Debtors' chapter 11 cases are set forth in the Maitre Declaration filed contemporaneously herewith.

<b><u>Relief Requested</u></b>

7.      By the Motion, Guardian requests, pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and MLBR 4001-2, that the Court (a) authorize Guardian's (i) use of Cash Collateral and (ii) grant of adequate protection to Paul Royalty and the Second Lien Agent, (b) modify the automatic stay for the limited purposes

provided for in the proposed Interim Order, and (c) schedule the Final Hearing pursuant to

Bankruptcy Rule 4001.

### Basis for Relief

8.    Currently, Guardian has no access to unencumbered funds.  Absent

authorization from the Court to use the Cash Collateral, Guardian will have to cease its operations

immediately, which will significantly reduce the value of Guardian's principal asset, ANTARA.

As described in detail in the Maitre Declaration, Guardian has no employees and must rely on

services provided by Oscient to continue sales of ANTARA.  Absent the ability to use Cash

Collateral to pay Oscient for postpetition services, Guardian will be unable to continue sales of

ANTARA or effect a successful sale of assets or other reorganization.

9.    For the above reasons, Guardian has determined, in the exercise of its

sound business judgment, that Guardian requires the use of Cash Collateral for the maintenance

and preservation of its property, the operation of its business, and the payment of expenses

attendant thereto, and the payment of the costs and expenses of administering its chapter 11 case.

Guardian hereby requests authority to use Cash Collateral for working capital and capital

expenditures, other general operating purposes, and to pay the costs and expenses of

administering Guardian's chapter 11 case, all in compliance with the Guardian Budget.  The

Guardian Budget, attached to the Interim Order as Exhibit A, is adequate, considering all

available assets, to pay administrative expenses due or accruing during the period covered by the

Guardian Budget.

10.    After an extensive negotiation, Paul Royalty has consented to the use of

the Cash Collateral pursuant to the terms and conditions outlined in the Interim Order.  Guardian

intends to seek the consent of the Second Lien Agent to the Interim Order in advance of the
interim hearing on this Motion.

## I.    The Proposed Adequate Protection

11.    Paul Royalty and the Second Lien Agent are each entitled to receive
adequate protection to the extent of any diminution in value of their respective interests in the
Prepetition Collateral (including Cash Collateral) resulting from the use of Cash Collateral,
Guardian's use, sale, or lease of Prepetition Collateral, the subordination of the Prepetition Liens
to the Carve Out, and the imposition of the automatic stay (collectively, the "Diminution in
Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code.

12.    Pursuant to the Interim Order, as adequate protection, Paul Royalty and
the Second Lien Agent (on behalf of the Second Lien Noteholders) will receive the adequate
protection described above, which consists in summary form of:

    (a) Replacement liens in substantially all of Guardian's assets;

    (b) Superpriority claims pursuant to sections 503(b) and 507(b) of the Bankruptcy
        Code; and

    (c) In the case of Paul Royalty (collectively, the "Senior Adequate Protection
        Payments"):

        (i) the deposit of the proceeds of sales of ANTARA into Guardian deposit
            account subject to a Paul Royalty control agreement;

        (ii) the continuation of certain payments under the RIAA;[4] and

        (iii) current payment of the fees and expenses of Paul Royalty's professionals.

13.    The Senior Adequate Protection Payments are limited as follows:

    (a) Guardian is not required to make the Senior Adequate Protection Payments
        unless it would, after making such payment, continue to hold at least $500,000
        in Cash Collateral

---

[4]    As provided in Paragraph 8 of the proposed Interim Order, Paul Capital has reserved its rights with respect
to the characterization of this payment as a payment of adequate protection.

(b) If the Court determines Paul Royalty is under-secured, all Senior Adequate
Protection Payments will be treated as payments of principal of the Paul
Royalty Note, subject to Paul Royalty's rights reservation.

## II.    The Use of Cash Collateral is Warranted and Should Be Approved

14.    Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use

"cash collateral" unless:

(A) each entity that has an interest in such collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease
in accordance with the provisions of [section 363].

11 U.S.C. § 363(c)(2).  See also In re LCC Fin. Corp., 2002 WL 31777643, at *2 (Bankr. D.N.H.

Nov. 21, 2002) ("Under section 363 of the Bankruptcy Code, the Debtor is not allowed to use

cash collateral without the movant's consent or an order of this Court.  Section 363(e) conditions

the use of cash collateral on a finding by the Court that the movant . . . is adequately protected.").

15.    Paul Royalty has consented to the use of their Cash Collateral upon the

terms set forth in the proposed Interim Order and outlined in the Motion, and the Guardian

intends to seek the consent of the Second Lien Agent in advance of the interim hearing on this

Motion.  And as set forth above, Guardian requires the immediate use of Cash Collateral to

maintain the value of its principal asset, ANTARA.  Absent use of the Cash Collateral, sales of

ANTARA will be brought to a halt in the near future, greatly decreasing the value of ANTARA

to the detriment of Guardian, its estate, and its creditors.  Use of the Cash Collateral is, therefore,

critical to preserve and maintain Guardian's estate and the possibility for a successful sale or

other reorganization.

## III.    The Proposed Adequate Protection Should Be Approved

16.    Section 363(e) of the Bankruptcy Code provides that, "on request of an

entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in

possession], the court . . . will prohibit or condition such use . . . as is necessary to provide

adequate protection of such interest." 11 U.S.C. § 363(e).  The concept of "adequate protection"

is not defined in the Bankruptcy Code, but section 361 of the Bankruptcy Code contains a non-

exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic

cash payments, additional liens, replacement liens, and the "indubitable equivalent of such

entity's interest in such property."  11 U.S.C. § 361.

17.     "The purpose of adequate protection is to provide a secured creditor the

benefit of its bargain while enabling a debtor to use secured property." In re Northeast Chick

Servs., Inc., 43 B.R. 326, 332 (Bankr. D. Mass. 1984); see also In re Pawtuxet Valley

Prescription & Surgical Ctr., Inc., 2008 WL 1990887, at *2 (Bankr. D.R.I. Mar. 10, 2008) ("It is

generally understood that adequate protection relates to maintaining the status quo for the period

between filing the petition and before confirmation or rejection of the plan of reorganization.").

18.     In considering a request for adequate protection, the court must balance

the protection of the creditor against a debtor's need for the use of property to reorganize.

> The concept of adequate protection is based on two contradictory
> realities.  One is that the use of cash collateral is essential to the
> success of the reorganization.  The other is that the use necessarily
> diminishes the value of the security bargained for by the creditor,
> and the secured position ought not be allowed to deteriorate.

In re Xinde Int'l, Inc., 13 B.R. 212, 215 (Bankr. D. Mass. 1981).  Courts often consider the harm

to the debtor's ultimate prospects for reorganization, which reorganization is generally to the

benefit of the secured creditors as well as to the debtor, if overly onerous adequate protection

requirements are imposed at the beginning of a case.  See id. ("If the court acts too swiftly and

too rigidly in requiring adequate protection, this debtor's chance of reorganization may be so

severely damaged as to be non-existent.")

19.     It is cost-effective and in the best interests of Guardian's estate, creditors, and all parties in interest that all parties consensually and without litigation resolve the use of the Cash Collateral and grant Paul Royalty and the Second Lien Agent the Proposed Adequate Protection.  Paul Royalty has consented to the use of their Cash Collateral upon the terms set forth in the proposed Interim Order and outlined in the Motion, and the Guardian intends to seek the consent of the Second Lien Agent in advance of the interim hearing on this Motion.  The Proposed Adequate Protection will protect the interests of both Paul Royalty and the Second Lien Agent in the Cash Collateral.  Accordingly, the Proposed Adequate Protection is fair and reasonable and sufficient to satisfy the requirements of section 363(c)(2) of the Bankruptcy Code.

## IV.     The Interim Approval Should Be Granted

20.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after the service of such motion. Fed. R. Bankr. P. 4001(b).  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Id.

21.     Pursuant to Bankruptcy Rule 4001(b), Guardian requests that the Court conduct an expedited preliminary hearing on the Motion and (a) authorize the Debtors to use the Cash Collateral of Paul Royalty and the Second Lien Agent in order to (i) maintain and finance the ongoing operations of Guardian, and (ii) avoid immediate and irreparable harm and prejudice to Guardian's estate and all parties in interest, and (b) schedule a Final Hearing on the relief requested herein.

## Guardian Satisfies Bankruptcy Rule 6003

22.    Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty days after the Petition Date.  Fed. R. Bankr. P. 6003.  As described above and in the Maitre Declaration, Guardian requires use of the Cash Collateral to continue its operations and maintain its value as a going concern.  Guardian submits that the relief requested in this Motion is necessary to avoid irreparable harm to Guardian's estate, as described herein, and that Bankruptcy Rule 6003 has been satisfied.

## Notice

23.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases.  Notice of the Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Massachusetts; (b) counsel to Paul Royalty; (c) counsel to the Indenture Trustees for the Debtors' Second Lien and Unsecured Notes, if any; (d) the creditors holding the thirty (30) largest claims against the Debtors' estates (on a consolidated basis); and (e) all known taxing authorities that have claims against the Debtors.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## Notice of Final Hearing

24.    Guardian further respectfully requests that the Court schedule a Final Hearing and authorize Guardian to serve notice of the entry of the Interim Order and of the Final Hearing, together with a copy of the signed Interim Order and the Motion, on (a) the parties given notice of this Motion; (b) any party which has filed prior to the date of entry of the Interim

Order a request for notices with the Court; and (c) counsel for any committee appointed pursuant to section 1102 of the Bankruptcy Code.  Guardian requests that the Court approve such notice of the Final Hearing as sufficient notice under Bankruptcy Rule 4001.

**No Prior Request**

25.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached to the Motion as Exhibit A:  (i) authorizing use of cash collateral, (ii) granting adequate protection, (iii) modifying the automatic stay, (iv) scheduling a final hearing, and (v) granting such other and further relief as is just and proper.

Dated: Boston, Massachusetts
      July 13, 2009

Respectfully submitted,

OSCIENT PHARMACEUTICALS CORP. and
GUARDIAN II ACQUISITION CORP.

By their proposed counsel,

/s/ Charles A. Dale III
Charles A. Dale III (BBO No. 558839)
Mackenzie L. Shea (BBO No. 666241)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 261-3100
Fax: (617) 261-3175

E-mail:
    chad.dale@klgates.com
    mackenzie.shea@klgates.com