UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

------------------------------x
:
**In re** : **Chapter 11**
:
**OSCIENT PHARMACEUTICALS** : **Case No. 09-16576 (HJB)**
**CORPORATION,** *et al.*,1 :
: **(Jointly Administered)**
**Debtors.** :
:
------------------------------x

ORDER APPROVING BIDDING PROCEDURES,
AND BREAK-UP FEE IN CONNECTION
<u>WITH PROPOSED SALE OF ANTARA AND RELATED ASSETS</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (the "<u>Debtors</u>"), for an Order (A) Authorizing and Approving Bidding Procedures and Break-Up Fee in Connection With Proposed Sale of Antara and Related Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances, and Interests and Proposed Assumption and Assignment of Executory Contracts; (B) Scheduling a Hearing to Consider Approval of the Sale of Certain Assets of the Debtors and Assumption and Assignment of Executory Contracts; (C) Prescribing the Manner of Notice for such Hearing; (D) Authorizing and Approving Asset Purchase Agreement with Akrimax Pharmaceuticals, LLC or Another Bidder Providing a Higher or Otherwise Better Offer; (E) Authorizing the Sale of ANTARA and Related Assets Free and Clear of All Liens,

---

1 The Debtors in these cases are Oscient Pharmaceuticals Corporation (Case No. 09-16576) and Guardian II Acquisition Corporation (Case No. 09-16579).

2 Capitalized terms not otherwise defined herein are used herein with the meanings as defined in the Motion.

11991263_6.DOC

Claims, Encumbrances and Other Interests; (F) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (G) Granting Other Related Relief.

Capitalized terms defined in the Motion or the Asset Purchase Agreement (defined below) and not otherwise defined herein are used herein with the meanings so defined.

The Motion requests, among other things, that this Court approve a sale pursuant to an Asset Purchase Agreement dated August 7, 2009 (the "Asset Purchase Agreement") between the Debtors and Akrimax Pharmaceuticals, LLC, a Delaware limited liability company ("Buyer"). The Motion also requests that, prior to considering approval of the sale, this Court establish a set of sale procedures (the "Bidding Procedures") governing the auction of the assets of the Debtors and other relief regarding the sale process and grant Buyer a Break-Up Fee under certain conditions.

The Debtors have requested that this Court grant the relief concerning the Bidding Procedures sought in the Motion pursuant to, *inter alia*, Sections 105, 363, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

NOW, THEREFORE, after reviewing pleadings filed by counsel to the Debtors, and based on all of the evidence, including any evidence proffered at a hearing regarding the Bidding Procedures held this date (the "Bidding Procedures Hearing"), representations and offers of proof made by counsel, and argument of counsel, and on the entire record of the Bidding Procedures Hearing, and any objections having been filed having been resolved, withdrawn, or overruled, and there appearing good cause therefor:

IT IS HEREBY FOUND AND CONCLUDED, pursuant to Rules 7052 and 9014 of the Bankruptcy Rules, that:

A.  On July 13, 2009 (the "Petition Date"), the Debtors commenced this case by filing voluntary petitions under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtors manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.  This Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of title 28 of the United States Code (the "Judicial Code"). This is a core proceeding pursuant to Section 157(b)(2) of the Judicial Code. Venue of the Chapter 11 Case in this District is proper pursuant to Section 1408 of the Judicial Code, and venue of this contested matter is proper pursuant to Section 1409(a) of the Judicial Code.

C.  The Debtors have provided notice of the relief sought with respect to the Bidding Procedures and the other relief requested in the Motion to (a) the Office of the United States Trustee for the District of Massachusetts, Eastern Division (the "US Trustee"); (b) counsel to Paul Royalty Fund Holdings II, LP; (c) the Indenture Trustees for the Debtors' Second Lien and Unsecured Notes, or their counsel; (d) counsel to the Official Committee of Unsecured Creditors in the Oscient case (the "Creditors' Committee"); (e) the creditors holding the 30 largest unsecured claims against each of the Debtors' estates; (f) all parties known to have asserted liens, claims, or encumbrances against the Purchased Assets; (g) federal and state taxing authorities' offices which have a reasonably known interest in the relief requested in the Motion; (h) counsel to the Buyer; and (i) all parties who have filed notices of appearance requesting service of notices and pleadings in this case (the "Core Notice Parties"). The notice of and opportunity to be heard with respect to the Bidding Procedures was proper, timely, adequate, and sufficient and meets the requirements of the Bankruptcy Code and Bankruptcy Rules, is reasonably calculated to give actual notice of the relief contemplated hereby, is appropriate under the circumstances,

11991263_6.DOC

and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice.

D. The approval of the Bidding Procedures is in the best interest of the Debtors, their estates and creditors, and other parties in interest. The Debtors' determination to propose and to agree to such provisions is within the reasonable business judgment of the Debtors. The Bidding Procedures, including the Break-Up Fee, are fair and reasonable and reasonably calculated to enhance the process of competitive bidding for and maximize recovery with respect to the Debtors' assets and are beneficial to the estates of the Debtors and all interested parties. The Break-Up Fee is fair, reasonable and necessary to preserve and enhance the value of the estate by encouraging further competitive bidding and providing other potential bidders with a benchmark as to the initial value of the Debtors' assets.

E. There is a need to have the auction of the Purchased Assets proceed as rapidly as possible, given that the Purchased Assets must be brought to commercial use to generate profit and are protected by patents that will expire in the future.

WHEREUPON, IT IS HEREBY ORDERED THAT:

### Approval of Bidding Procedures; Notices

1. The relief sought in the Motion concerning the Bidding Procedures is granted. To the extent that there is any conflict between the provisions of this Order and the provisions of the Motion or the Asset Purchase Agreement, the terms of this Order shall control. The Bidding Procedures annexed hereto as <u>Exhibit A</u> shall be, and hereby are, approved. The Notice of Sale, annexed to the Motion as <u>Exhibit D</u>, as such notice may be amended appropriately to conform with the provisions of this Order, shall be, and hereby is, approved.

11991263_6.DOC

2. Upon entry of this Order, the Debtors intend to serve by first-class mail, postage pre-paid, within two business days (i) this Order and the Notice of Sale upon the Core Notice Parties and any party that has previously expressed an interest in the Purchased Assets, and (ii) the Notice of Sale upon all other persons entitled to notice pursuant to Bankruptcy Rule 2002(a)(2). The Debtors intend to serve all non-debtor parties to all executory contracts that may be assigned as a condition to or in connection with the closing of the Asset Purchase Agreement ("Assigned Contracts") a copy of this Order and notice of the Motion and Sale Hearing substantially in the form of notice annexed to the Motion as Exhibit E, as such notice may be amended appropriately to conform with the provisions of this Order (the "Assigned Contract Notice"). Each of the notices provides the recipient with ample notice of the relief requested, the relative impact that such relief may have on the recipient, and the procedures that a recipient must follow in the event that such recipient wishes to respond, participate in the Auction (defined below), or otherwise object to the relief requested, as the case may be. As soon as practicable after entry of this Order, the Debtors shall publish the Notice of Sale in the *Boston Globe*. The form and manner of notice set forth in this paragraph and the preceding paragraph are reasonable and sufficient to provide effective notice to all interested parties and shall be, and hereby are, approved as sufficient notice of the Bidding Procedures, the Sale Hearing, the Motion, and all relief (not granted or otherwise addressed by this Order) contemplated thereby.

3. Pursuant to Bankruptcy Rule 9014, objections to the Motion (except as related to this Order) and/or the Asset Purchase Agreement must: (a) be in writing; (b) state the legal and factual basis for such objection; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (d) be filed with the Clerk of the Bankruptcy Court; and (e) be served on (i) counsel to the Debtors, K&L Gates LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111,

Attn: Charles A. Dale III, and Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, Attn: James M. Wilton, Esq.; (ii) counsel to Buyer, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Michael J. Lerner; (iii) counsel to Paul Royalty Fund Holdings II, LP, Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02100, Attn: John Sigel, and Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, NY 10022 Attn: James Millar, (iv) counsel to the Official Committee of Unsecured Creditors in the Oscient case, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Richard E. Mikels; (v) counsel to U.S. Bank, Nixon Peabody, 100 Summer Street, Boston, MA 02110, Attn: Richard C. Pedone; and (vi) counsel to the Office of the United States Trustee, 10 Causeway Street, Room 1184, Boston, MA 02222-1043, Attn: Eric K. Bradford (collectively, the "Service Parties"), so as to be received no later than 12:00 noon prevailing Eastern time, on September 14, 2009 (the "Objection Deadline"). Any objection not filed and served strictly in compliance with this paragraph shall be overruled. Any non-debtor party to any Assigned Contract that does not object to the assumption and assignment of such Assigned Contract strictly in accordance with this Order shall be deemed to have given the consent contemplated by sections 365(c)(1)(B) and 365(f)(1) of the Bankruptcy Code to the assumption and assignment of such Assigned Contract pursuant to the Asset Purchase Agreement, upon payment of cure amounts, if any, as specified in the Assigned Contract Notice.

### Procedures Related to Assumption and Assignment of Executory Contracts

4.  With respect to the Assigned Contracts, which may be assumed and assigned as a condition to or in connection with the closing of the Asset Purchase Agreement, any interested party seeking to object to the assumption and assignment to Buyer or another bidder providing a

higher or otherwise better offer, or to the validity of the cure amount, if any, as set forth in the Assigned Contract Notice, or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses as of the Petition Date (including accrued but not yet due obligations) must be cured or satisfied under any of the Assigned Contracts in order for such contract to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Cure Objection") setting forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied with respect to such Assigned Contract so that such Cure Objection is received by the Service Parties not later than 12:00 noon prevailing Eastern time on September 14, 2009 (the "Cure Objection Deadline"); provided, however, that any such party to an Assigned Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing (as defined below).

5. Unless a Cure Objection is filed and served by a party to an Assigned Contract or a party interested in an Assigned Contract by the Cure Objection Deadline, all interested parties who have received actual notice hereof shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assignment and shall be forever barred and estopped from asserting or claiming against the Debtors, Buyer, or any other assignee of the relevant assigned contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Contract for the period prior to the Petition Date.

6. Cure Objections shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment, and the support therefor and all other objections to assumption and assignment.

7.  Hearings with respect to Cure Objections may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate, *provided* that if the subject Assigned Contract is assumed and assigned prior to resolution of any Cure Objection, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by Buyer to be held in a segregated account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

8.  (a) This Order shall not be deemed to have established the Cure Obligation for any Assigned Contract as to which a party thereto timely files a Cure Objection with the Court and serves such objection <u>so as to be received</u> by the Service Parties not later than the Cure Objection Deadline.

(b) The Debtors shall furnish Ethypharm, S.A. ("<u>Ethypharm</u>") such information as is reasonably requested concerning assignability and adequate assurance of future performance. Nothing contained herein will prejudice the rights of Ethypharm to propound discovery to obtain such other or additional information as it deems necessary.

## **<u>Requirements for Counteroffers</u>**

9.  An auction (the "<u>Auction</u>") for the Purchased Assets will be conducted by the Court in the Berkshire Courtroom, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts, at 11:00 a.m. on September 21, 2009. A hearing to consider approval of the sale to Buyer pursuant to the Asset Purchase Agreement or to any Successful Bidder (as defined below) and any objections to the sale will commence immediately following the Auction at the place set forth in the preceding sentence (the "<u>Sale Hearing</u>"). Only entities that (i) submit a competing bid at a purchase price with a minimum cash component payable at closing of $20,600,000 and provide other consideration that the Debtors in their discretion, acting in good

faith, in consultation with the Creditors' Committee, determine constitutes a higher and better offer than that of the Buyer pursuant to the Asset Purchase Agreement, and deliver a $1,200,000 cash deposit to counsel to the Debtors (a "Counteroffer"), and (ii) satisfy each of the other requirements (except as waived by the Debtors in consultation with the Creditors' Committee or by further order of this Court, as applicable) set forth in the Bidding Procedures annexed to this Order as Exhibit A ("Qualified Bidders") shall be permitted to participate in the Auction. Notwithstanding the foregoing, a creditor holding a valid secured claim against the Purchased Assets may, in accordance with the Bankruptcy Code, credit bid all or a portion of its secured claim and, if its secured claim exceeds $1,200,000, need not deliver a cash deposit.

10. The Court may authorize the Debtors pursuant to the Sale Order to close the sale with the next highest bidder in the event that the highest bidder approved at the Sale Hearing fails to timely close the Sale and any deposits made by bidders may be held in escrow until the fifth business day after entry of the Sale Order in connection with such closing.

### Break-Up Fee

11. Recognizing the value and benefits that the Buyer has provided to the Debtors by entering into the Asset Purchase Agreement, as well as the Buyer's expenditures of time, energy, and resources, including for legal fees and other costs, Buyer is hereby granted a fee equal to the lesser of (x) $300,000 or (y) the actual fees and expenses incurred by Buyer in connection with this transaction (the "Break-Up Fee") payable in the event that the Debtors would not have the ability to terminate the Asset Purchase Agreement pursuant to Sections 10.1.5 or 10.8 thereof and the Bankruptcy Court fails to approve a sale to Buyer and instead the Bankruptcy Court (a) approves a sale of the Purchased Assets to an entity (other than an entity affiliated with Buyer) that has submitted a Counteroffer (as defined in the Bidding Procedures) (the "Successful

Bidder"), and such sale closes, (b) Guardian confirms a plan of reorganization under chapter 11 of the Bankruptcy Code, or (c) the Debtors otherwise determine not to proceed with the Transaction (other than by reason of a termination of the Asset Purchase Agreement pursuant to Sections 10.1.5 or 10.1.8 thereof). The Break-Up Fee shall constitute an allowed administrative expense of the Debtors' estates under §§ 503(b) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the priority accorded thereto in paragraph 16(a)(v) of the Final Cash Collateral Order.

12. The Debtors shall file with this Court a true and correct copy of the Asset Purchase Agreement, including all schedules attached thereto.

13. The Debtors are authorized and empowered to take or perform such actions and expend such funds as may be necessary to effectuate the terms of this Bidding Procedures Order.

SO ORDERED.

Dated: Worcester, Massachusetts
       08/12, 2009

_____
Honorable Henry J. Boroff
United States Bankruptcy Judge

-10-

11991263_6.DOC

<u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

---------------------------------x
                                 :
**In re**                        :    **Chapter 11**
                                 :
**OSCIENT PHARMACEUTICALS**      :    **Case No. 09-16576 (HJB)**
**CORPORATION,** *et al.*,3      :
                                 :    **(Jointly Administered)**
           **Debtors.**          :
                                 :
---------------------------------x

**BIDDING PROCEDURES FOR AUCTION OF ANTARA AND
<u>RELATED ASSETS OF OSCIENT PHARMACEUTICALS CORPORATION</u>**

The following bidding procedures shall apply in connection with counteroffers for certain assets of Guardian II Acquisition Corporation and of Oscient Pharmaceuticals Corporation held on behalf of Guardian (the "<u>Purchased Assets</u>") as described in the Asset Purchase Agreement dated August 7, 2009 between Oscient Pharmaceuticals Corporation and Guardian II Acquisition Corporation (the "<u>Sellers</u>") and Akrimax Pharmaceuticals, LLC ("<u>Buyer</u>") (such agreement, the "<u>Asset Purchase Agreement</u>"):

1. Any counteroffer or bid for any of the Purchased Assets (a "<u>Counteroffer</u>") shall comply with all of the following requirements.

   1.1. Any Counteroffer shall provide for:

      1.1.1. a purchase price with a minimum cash component payable at closing of $20,600,000 (the "<u>Minimum Initial Overbid</u>");

      1.1.2. other consideration that Sellers in their discretion acting in good faith in consultation with the Official Committee of Unsecured Creditors in the Oscient case (the "<u>Creditors' Committee</u>") determines constitutes a higher and better offer than that of the Buyer pursuant to the Asset Purchase Agreement; and

---

3 The Debtors in these cases are Oscient Pharmaceuticals Corporation (Case No. 09-16576) and Guardian II Acquisition Corporation (Case No. 09-16579).

-11-

11991263_6.DOC

        1.1.3. a cash deposit of $1,200,000.

  1.2. Notwithstanding the foregoing, a creditor holding a valid secured claim against the Purchased Assets may, in accordance with the Bankruptcy Code, credit bid all or a portion of its secured claim and, if its secured claim exceeds $1,200,000, need not deliver a cash deposit.

2. Any Counteroffer shall further comply with all of the following requirements:

  2.1. Any Counteroffer shall:

        2.1.1. contain a case caption as set forth above and be filed[4] with the United States Bankruptcy Court for the District of Massachusetts, 300 State Street, Springfield, Massachusetts on or before 12:00 noon on September 14, 2009, (the "Bidding Deadline"), with a copy delivered so that it is actually received by (i) counsel for the Sellers, K&L Gates LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111, Attn: Charles A. Dale III, and Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, Attn: James M. Wilton, Esq., Telecopy: 617-951-7050; (ii) counsel to Buyer, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Michael J. Lerner, Telecopy: 973-597-2400; (iii) counsel to Paul Royalty Fund Holdings II, LP, Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02100, Attn: John Sigel, and Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, NY 10022 Attn: James Millar, Telecopy: 212-230-8888; (iv) counsel to the Official Committee of Unsecured Creditors, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: Richard E. Mikels; (v) counsel to U.S. Bank, Nixon Peabody, 100 Summer Street, Boston, MA 02110, Attn: Richard C. Pedone; and (vi) counsel to the Office of the United States Trustee, 10 Causeway Street, Room 1184, Boston, MA 02222-1043, Attn: Eric K. Bradford before the Bidding Deadline;

        2.1.2. be accompanied by an executed asset purchase agreement in the form of the Asset Purchase Agreement with such changes as are acceptable to the entity submitting the Counteroffer, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Counteroffer Asset Purchase Agreement"); and

        2.1.3. be accompanied by a marked copy of the Counteroffer Asset Purchase Agreement showing changes from the Asset Purchase Agreement.

---

[4] Please note that Counteroffers filed by facsimile will not be accepted pursuant to Rule 5005-4(a)(4) of the Local Rules of the U.S. Bankruptcy Court for the District of Massachusetts.

-12-

    2.2. In lieu of a Counteroffer Asset Purchase Agreement, an entity submitting a Counteroffer may submit a detailed and binding term sheet for the acquisition of stock of the reorganized Guardian through a plan of reorganization.

    2.3. The cash deposit delivered in connection with the Counteroffer shall be delivered to Ropes & Gray LLP, by certified check or wire transfer, so as to be received on or before September 14, 2009.

    2.4. The entity submitting a Counteroffer shall enter into joint escrow instructions with Sellers and Ropes & Gray LLP regarding the deposit delivered in connection with such Counteroffer.

    2.5. The terms and conditions of the Counteroffer must be, in aggregate, not materially more burdensome to Sellers than provisions contained in the Asset Purchase Agreement.

    2.6. Any bidder submitting a Counteroffer shall demonstrate to Sellers' satisfaction in Sellers' sole discretion in consultation with the Creditors' Committee that it is (a) financially able to consummate the transactions contemplated by the Counteroffer, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, and (b) able to consummate the transaction on the date and on the terms contemplated by the Counteroffer Asset Purchase Agreement.

3. A hearing to consider approval of the sale to Buyer pursuant to the Asset Purchase Agreement and any objections will commence immediately following the Auction (as defined below). In the event that Counteroffers meeting the above requirements are received, an auction sale of the Purchased Assets (the "Auction") will be conducted by the Court at 11:00 a.m. on September 21, 2009, in the Berkshire Courtroom, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts in accordance herewith and with other bidding procedures to be announced at the time of the Auction.

11991263_6.DOC