UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---------------------------------x
:
In re : Chapter 11
:
OSCIENT PHARMACEUTICALS : Case No. 09-16576
CORPORATION, *et al.*,[1] :
: (Jointly Administered)
Debtors. :
:
---------------------------------x

### ORDER (I) APPROVING AND AUTHORIZING SALE OF CERTAIN OF DEBTOR'S ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] of Oscient Pharmaceuticals Corporation (the "Debtor"), for an order (the "Order") pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the Debtor to (i) sell substantially all assets related to the pharmaceutical product containing the active ingredient gemifloxacin and marketed under the trademark FACTIVE for the five-day treatment of acute bacterial exacerbations of chronic bronchitis and community-acquired pneumonia (the "Product") to Cornerstone BioPharma Inc. ("Buyer") free and clear of liens, claims, encumbrances, and other interests and (ii) assume and assign certain executory contracts; and this Court having considered the (x) Preliminary Objection of LG Life Sciences, Ltd. to Debtor's Motion for an Order Authorizing the Sale of FACTIVE and Related Assets [Dkt. No.

---

[1] The Debtors in these cases are Oscient Pharmaceuticals Corporation (Case No. 09-16576) and Guardian II Acquisition Corporation (Case No. 09-16579).
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

12159981_9.DOC

98] and (y) Objection of LG Life Sciences, Ltd. to Debtor's (A) Motion for an Order Authorizing the Sale of FACTIVE and Related Assets and (B) Proposed Cure Amount [Dkt. No. 245] (collectively, the "LG Objection"), filed by LG Life Sciences, Ltd. ("LG") to the Sale Motion in connection with the assumption and assignment of the Option and License Agreement, dated as of October 22, 2002 (as amended, the "License"), between the Debtor and LG; and this Court having considered the other objections filed to the Sale Motion; and this Court having determined that the relief requested in the Sale Motion is in the best interests of the Debtor, its estates, its creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; adequate notice having been given and a hearing having been held on September 2, 2009 (the "Hearing"); the Court having considered the testimony, documentary evidence, offers of proof (to the extent consented to by the parties), stipulations of the parties, and the arguments of counsel; good cause otherwise having been shown for the relief requested;

NOW, upon the Sale Motion, the exhibits annexed thereto, the evidence presented at the Hearing and the arguments of counsel advanced at the Hearing, and all prior pleadings and proceedings made herein,

THE COURT HEREBY FINDS:

A.   This Court, pursuant to 28 U.S.C. § 1334, has jurisdiction over all assets of the Debtor and its chapter 11 estate. The Sale Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue of the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   The Asset Purchase Agreement proposed by Buyer was offered in good faith, from arm's-length bargaining positions without collusion or fraud, by the parties.

C.  The Debtor and its advisers have diligently and in good faith marketed the Purchased Assets to secure the highest and best offer or offers therefor. The total consideration provided for in the Asset Purchase Agreement entered into with Buyer, and the transactions contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets, and constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or District of Columbia, for the Purchased Assets.

D.  The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code prior to, and outside of, a plan of reorganization.

E.  The Asset Purchase Agreement must be approved promptly in order to preserve the value of the Purchased Assets. The Asset Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets, and the Asset Purchase Agreement and the closing thereon will provide a greater recovery for the Debtor's creditors than would be provided by any other presently available alternative.

F.  Buyer has acted in good faith in this matter, and is a good faith purchaser as that term is used in the Bankruptcy Code, and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

G.  With respect to any and all persons or entities asserting any lien, claim (as that term is defined in section 101(5) of the Bankruptcy Code), encumbrance, or interest of any

nature or extent (each, an "Encumbrance") on the Purchased Assets, (i) applicable non-bankruptcy law permits sale of such property free and clear of such Encumbrance; (ii) such person or entity has consented to the sale and transfer, license, and assignment as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license, and assignment, as applicable; (iii) such Encumbrance is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such Encumbrance is in bona fide dispute; or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Encumbrance; so that the conditions of section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Encumbrances who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

H.    All defaults (other than defaults of the type specified in section 365(b)(2) of the Bankruptcy Code) under the License and the Additional Assigned Contracts set forth in Schedule A hereto (collectively with the License, the "Closing Date Assigned Contracts") will be cured by Buyer or the Debtor at or prior to Closing, as a result of which all defaults necessary to be cured will have been cured, and adequate assurance of Buyer's future performance under said License and other Closing Date Assigned Contracts has been provided within the meaning of sections 365(b) and (f)(2)(B) of the Bankruptcy Code. The amounts required to cure all monetary defaults and pay all actual pecuniary losses under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code (the "Cure Amounts") (i) in connection with the assumption and assignment of the License is $111,355.09 ($94,651.82 of which is payable to LG

and $16,703.26 is payable as Internal Revenue Service withholding), and (ii) in connection with the assumption and assignment of the other Closing Date Assigned Contracts are those amounts set forth on Schedule A hereto.

I. The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the License and the other Closing Date Assigned Contracts to the Buyer and that the assumption and assignment of the License and the other Closing Date Assigned Contracts is in the best interest of the Debtor and its chapter 11 estate.

J. The assumption and immediate assignment of the License and the other Closing Date Assigned Contracts to Buyer is subject to all the provisions of the Asset Purchase Agreement. Each and every provision of the Closing Date Assigned Contracts (other than the License) or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any such Closing Date Assigned Contracts have been satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. LG has consented to the assignment of the License to Buyer on the terms agreed to between LG and Buyer.

K. Under all the circumstances presented, (i) all actions contemplated in the Asset Purchase Agreement; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Purchased Assets by the Debtor to Buyer; (iv) the assumption and immediate assignment to Buyer of the License and the other Closing Date Assigned Contracts; and (v) the receipt by the Debtor of the Purchase Price are in the best interests of the Debtor and its estate, creditors, and interest holders.

L. Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.

M.  The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with as they are applicable to the transfer of the Purchased Assets and the assumption and assignment of the License and the other Closing Date Assigned Contracts by the Debtor to Buyer.

N.  The Debtor and/or Buyer have given due and proper notice of the proposed sale of the Purchased Assets to all parties required to receive notice, including without limitation, to each secured party, all holders of encumbrances of record with respect to the Purchased Assets, all of the counterparties to the License and the other Closing Date Assigned Contracts, all municipalities and licensing agencies, and any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) having a claim against the Debtor or the Purchased Assets, and all entities reasonably known to have expressed an interest in a transaction with respect to the Purchased Assets during the past twelve months.

O.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Purchased Assets, has been afforded to all interested parties and entities.

P.  Except with respect to liabilities expressly assumed in the Asset Purchase Agreement, the Closing and the consummation of the transactions contemplated by the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition operation of the business of the Debtor or the postpetition operation of the business of the Debtor. The Buyer is not holding itself out to the public as a continuation of the Debtor, and no common identity of incorporators, directors, or stockholders exists between the Buyer and the Debtor. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtor's assets. The transactions contemplated by the Asset Purchase Agreement do not amount

6

12159981_9.DOC

to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor and/or the Debtor's estate, there is not substantial continuity between the Buyer and the Debtor, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation of the Debtor or the Debtor's estate, and the Buyer does not constitute a successor to the Debtor or the Debtor's estate. Upon the Closing, the Buyer shall be deemed to have assumed only the liabilities expressly assumed in the Asset Purchase Agreement. Except for those assumed liabilities, the Buyer's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Buyer's operation and use of the Purchased Assets acquired from the Debtor shall not be deemed a continuation of the Debtor's business. The Court finds that the Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

Q.   Neither the Debtor nor Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the transactions contemplated thereby to be avoided or avoidable, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Buyer is not an "insider" or "affiliate" of the Debtor (as such terms are defined in the Bankruptcy Code).

R.   As of the Closing under the Asset Purchase Agreement, Buyer or Seller will have paid cure amounts for the License and the other Closing Date Assigned Contracts as set forth herein or on <u>Schedule A</u> hereto and has provided each of the counterparties to the License and the other Closing Date Assigned Contracts with adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code. Therefore, all defaults, if any, under the License and the other Closing Date Assigned Contracts, whether or not notice has been given,

7

have been cured or waived, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default under the License or the other Closing Date Assigned Contracts. Upon assignment and sale to the Buyer, the License and other Closing Date Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, notwithstanding, without limitation, the attempt by Menarini International Operation Luxembourg SA to terminate its Closing Date Assigned Contract without the approval of this Court, which attempted termination has been rescinded as reflected on the docket.

S.  Time is of the essence in consummating the Sale. In order to maximize the value of the Debtor's assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement. Accordingly, the Court finds that there is cause to waive and/or vacate the stays imposed by Rules 6004(h) and 6006(d) of the Bankruptcy Rules, and such stays are hereby vacated and shall have no application to the relief afforded by this Order.

T.  The LG Objection has been withdrawn with prejudice.

U.  LG and Cornerstone have entered into the Binding Term Sheet dated as of the date hereof (the "Binding Term Sheet").

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.  The Sale Motion is hereby granted in all respects. All objections with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled are hereby overruled on the merits. The Asset Purchase Agreement, an executed copy of which was filed with the Court, is approved in all respects.

2. The Debtor is hereby authorized, empowered, and directed, and, upon entry of this Order, has all the power and authority necessary to:

   a. Fully perform under, consummate, implement, execute, and deliver the Asset Purchase Agreement and all other documents contemplated thereby, to consummate the transactions contemplated by the Asset Purchase Agreement, and to take all other actions required to be taken pursuant to the Asset Purchase Agreement;

   b. Transfer the Purchased Assets to Buyer and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Purchased Assets to Buyer;

   c. Assume and assign the License and the other Closing Date Assigned Contracts effective upon the Closing and upon the terms and conditions set forth in the Asset Purchase Agreement;

   d. Receive the consideration described in the Asset Purchase Agreement from Buyer and take any action necessary to effectuate the receipt of such consideration; and

   e. Fully perform and take all action necessary to effectuate the Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

3. No other or further consents or approvals of this Court are required for the Debtor to consummate or effectuate (i) the Asset Purchase Agreement, (ii) the transfer of the Purchased

Assets, (iii) the assumption and assignment to Buyer of the License and the other Closing Date Assigned Contracts, and (iv) the receipt of consideration from Buyer.

4.     Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to Buyer, and, upon the Closing under the Asset Purchase Agreement, the Purchased Assets shall be free and clear of any and all Encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtor's business, whether arising prior to or subsequent to the commencement of the Debtor's case under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of this chapter 11 case), and whether imposed by agreement, understanding, law, equity, or otherwise (except as otherwise provided in the Asset Purchase Agreement or this Order), which Encumbrances, if any (including those asserted by Paul Royalty Fund Holdings II to the extent valid), shall attach to the proceeds of the sale in the same priority and subject to the same defenses and avoidability as of the Closing, and all parties shall retain their rights with respect to such Encumbrances without prejudice. In furtherance but not in limitation of the foregoing, the Debtors shall deposit and maintain 9% of the proceeds in a segregated account pending (i) resolution of any disputes concerning the Encumbrances asserted by Paul Royalty Fund Holdings II, or (ii) further order of the Court. This Order does not determine the extent or validity of any claims against the Debtors or any defenses to such claims, all of which are reserved by the parties.

5.     Except as expressly permitted by the Asset Purchase Agreement and this Order, all persons or entities holding or asserting any Encumbrance of any kind or nature with respect to the Purchased Assets or business formerly conducted by the Debtor shall be, and hereby are, barred from asserting such Encumbrance against Buyer, its successors and assigns, or the

Purchased Assets. All persons asserting Encumbrances consisting of possessory liens or in possession of Purchased Assets shall turn over possession of Purchased Assets to Buyer and any such Encumbrances, to the extent valid, shall attached to the proceeds of the sale.

6. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Buyer or its successors and assigns with respect to any Encumbrance. Without limiting the generality of the foregoing, Buyer shall have no liability for any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its directors, officers, or shareholders.

7. Except as expressly provided in the Asset Purchase Agreement, the consummation of the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition or postpetition operation of the business of the Debtor in any form or manner whatsoever, including, without limitation, by reason of any theory of successor or transferee liability, *de facto* merger, or substantial continuity, whether known or unknown and whether asserted or unasserted as of the Closing.

8. If any person or entity that has filed a financing statement or other documents or agreements evidencing an Encumbrance on the Purchased Assets shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases, and other documents to the Debtor prior to the Closing, then the Debtor shall be and hereby is authorized to execute such termination statements, instruments of satisfaction, releases, and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-

executing, and notwithstanding the failure of Buyer, the Debtor, or any other party to execute, file, or obtain releases, termination statements, assignment consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Asset Purchase Agreement with respect to the sale of the Purchased Assets and the assumption and assignment of the License and the other Closing Date Assigned Contracts, all Encumbrances on the Purchased Assets and the License and the other Closing Date Assigned Contracts shall be and hereby are deemed to be divested, terminated, and discharged.

9. The Debtor is hereby authorized in accordance with section 365 of the Bankruptcy Code to (i) sell, assume, assign, and transfer to Buyer the License and the other Closing Date Assigned Contracts pursuant to the provisions of sections 363 and 365 of the Bankruptcy Code, free and clear of any and all Encumbrances, and (ii) execute and deliver to Buyer such assignment documents as may be necessary to sell, assign, and transfer the License and the other Closing Date Assigned Contracts.

10. On or before the Closing and as provided in the Asset Purchase Agreement, Buyer or the Debtor shall pay the Cure Amount for the License. Other than payment of such amounts, if any, no other action needs to be taken with respect to any of the License or the other Closing Date Assigned Contracts in order for the Debtor to assume the License and the other Closing Date Assigned Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code.

11. The License and the other Closing Date Assigned Contracts shall, upon assumption and assignment to Buyer, be deemed to be valid and binding and in full force and effect and enforceable by Buyer in accordance with their respective terms, notwithstanding, without limitation, the attempt by Menarini International Operation Luxembourg SA to terminate its Closing Date Assigned Contract without the approval of this Court, which attempted

termination has been rescinded as reflected on the docket. Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved, from the date of its assignment, from any further liability with respect to the License and the Assigned Contracts. Buyer shall not, as a result of such assignment, assume any liability under the License or the Assigned Contracts for events occurring prior thereto.

12. The assumption and assignment of the License and the other Closing Date Assigned Contracts is conditioned upon the Debtor closing under the Asset Purchase Agreement, and the transfer of the Purchased Assets is conditioned upon the assumption and assignment of the License pursuant to this Order.

13. The Debtor is hereby authorized, empowered, and directed, and, upon entry of the Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Asset Purchase Agreement and any transaction contemplated thereby. The Debtor shall cooperate with and take all actions reasonably requested by Buyer to effectuate the Asset Purchase Agreement and any transaction contemplated thereby.

14. All of the transactions and actions contemplated by this Order are properly authorized under sections 363 and 365 of the Bankruptcy Code.

15. The consideration provided by Buyer for the Purchased Assets (including the License and the other Closing Date Assigned Contracts) under the Asset Purchase Agreement is fair and reasonable, and the result of marketing efforts to 130 potentially interested parties that culminated in a bid negotiated in good faith at arms' length, and may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

12159981_9.DOC

16. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and any agreements executed in connection therewith in all respects, including but not limited to, retaining jurisdiction (a) to compel delivery of the Purchased Assets (including the License and the other Closing Date Assigned Contracts) to Buyer; (b) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein; (c) to protect the Buyer, or the Purchased Assets, from and against any Encumbrances; and (d) to interpret, implement, and enforce the provisions of this Order.

17. The transactions contemplated by the Asset Purchase Agreement are undertaken by Buyer, in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good-faith purchaser, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

18. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and its affiliates, and the successors and assigns of each of the foregoing, and any affected third parties, including all non-debtor parties to the License and other Closing Date Assigned Contracts, notwithstanding conversion or dismissal of the Debtor's bankruptcy case or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

19. The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such

12159981_9.DOC

provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

20. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Debtor and Buyer, and in accordance with the terms of the Asset Purchase Agreement, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the estate of the Debtor.

21. The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order. The Debtor irrevocably waives any right to seek any modification of this Order without the prior written consent of Buyer, and no such consent shall be implied by any other action, inaction, or acquiescence by Buyer.

22. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten days are hereby waived and this Order shall be effective, and the parties may consummate the transactions contemplated by the Asset Purchase Agreement, immediately upon entry.

23. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an order confirming any plan of reorganization or liquidation of the Debtor or converting of the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

24. The Debtor is authorized to affirm and assent to the Binding Term Sheet.

25.  This Court shall retain jurisdiction over the parties to the Asset Purchase Agreement and the License and the other Closing Date Assigned Contracts with respect to any matters related to or arising under the Asset Purchase Agreement or under this Order.

Dated: __09|04__, 2009

/s/ Henry Jel Boroff
United States Bankruptcy Judge

# SCHEDULE A

## Additional Assigned Contracts

| Counterparty | Notice Address | Date | Type | Cure Amount |
|---|---|---|---|---|
| Menarini International Operation Luxembourg SA | Menarini International Operation Luxembourg SA<br>1, Avenue de La Gar, L-1611 Luxembourg GD<br>Attn: Menarini Director<br>*with a copy to:*<br>A. Menarini Industrie Farmaceutiche Riunite SRL<br>3, Via Sette Santi<br>50131 Florence – Italy<br>Attn: Legal Affairs | 12/28/2006, as amended | Sublicense | $0.00 |
| Pfizer, S.A. de C.V. | Pfizer, S.A. de C.V.<br>Paseo de los Tamarindos #40<br>Bosques de las Lomas<br>Mexico Distrito Federal, 05120<br>Attn: Business Planning Director<br>*with a copy to:*<br>Pfizer, S.A. de C.V.<br>Paseo de los Tamarindos #40<br>Bosques de las Lomas<br>Mexico Distrito Federal, 05120<br>Attn: Legal Director | 2/6/2006 | Sublicense | $0.00 |

12159981_9.DOC