UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

```
------------------------------x
                              :
In re                         :    Chapter 11
                              :
OSCIENT PHARMACEUTICALS       :    Case No. 09-16576 (HJB)
CORPORATION, et al.,          :
                              :    (Jointly Administered)
         Debtors.             :
                              :
------------------------------x
```

### ORDER (I) APPROVING AND AUTHORIZING SALE OF ANTARA AND RELATED ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[1] of the above-captioned debtors (the "Debtors"), for an order (the "Order") pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the Debtors to (i) sell substantially all assets related to the pharmaceutical product ANTARA (the "Product") to Akrimax Pharmaceuticals, Inc. or another bidder submitting a higher and better offer, free and clear of liens, claims, encumbrances, and other interests and (ii) assume and assign certain executory contracts; and this Court having determined that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; adequate notice having been given and a hearing having been held on September 21, 2009 (the "Hearing"); the Court having considered the testimony, documentary evidence, offers of proof

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

11984572_5.DOC

(to the extent consented to by the parties), stipulations of the parties, and the arguments of counsel; and this Court having determined that Lupin Limited ("Buyer") has submitted the highest and best offer for the Purchased Assets; and good cause otherwise having been shown for the relief requested;

NOW, upon the Sale Motion, the exhibits annexed thereto, the evidence presented at the Hearing and the arguments of counsel advanced at the Hearing, and all prior pleadings and proceedings made herein,

THE COURT HEREBY FINDS:

A.     This Court, pursuant to 28 U.S.C. § 1334, has jurisdiction over all assets of the Debtors and their chapter 11 estates. The Sale Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue of the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The Asset Purchase Agreement proposed by Buyer, as modified on the record of the Sale Hearing (the "Asset Purchase Agreement") was offered in good faith, from arm's-length bargaining positions without collusion or fraud, by the parties.

C.     The Debtors and their advisers have diligently and in good faith marketed the Purchased Assets to secure the highest and best offer or offers therefor. The total consideration provided for in the Asset Purchase Agreement entered into with Buyer, and the transactions contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets, and constitutes (a) reasonably equivalent value under the Bankruptcy Code and (b) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or District of Columbia, for the Purchased Assets.

D. The Debtors have demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code prior to, and outside of, a plan of reorganization.

E. The Asset Purchase Agreement must be approved promptly in order to preserve the value of the Purchased Assets. The Asset Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets, and the Asset Purchase Agreement and the closing thereunder will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

F. Buyer has acted in good faith in this matter, and is a good faith purchaser as that term is used in the Bankruptcy Code, and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

G. With respect to any and all persons or entities asserting any lien, claim (as that term is defined in section 101(5) of the Bankruptcy Code), encumbrance, or interest of any nature or extent (each, an "Encumbrance") on the Purchased Assets, (i) applicable non-bankruptcy law permits sale of such property free and clear of such Encumbrance; (ii) such person or entity has consented to the sale and transfer, license, and assignment as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license, and assignment, as applicable; (iii) such Encumbrance is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such Encumbrance is in bona fide dispute; and/or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Encumbrance; so that the conditions of section 363(f) of the Bankruptcy Code have been

11984572_5.DOC

satisfied. Those holders of Encumbrances who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

H. The Debtors have demonstrated that it is an exercise of its sound business judgment to assume and assign the Ethypharm Contract (as defined in the Asset Purchase Agreement) and the Additional Assigned Contracts set forth in Schedule A hereto (collectively, the "Closing Date Assigned Contracts") to the Buyer and that the assumption and assignment of the Closing Date Assigned Contracts is in the best interest of the Debtors and their chapter 11 estates.

I. The assumption and immediate assignment of the Closing Date Assigned Contracts to Buyer is subject to all the provisions of the Asset Purchase Agreement. Each and every provision of the Closing Date Assigned Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any of the Closing Date Assigned Contracts have been satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.

J. Under all the circumstances presented, (i) all actions contemplated in the Asset Purchase Agreement; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Purchased Assets by the Debtors to Buyer; (iv) the assumption and immediate assignment to Buyer of the Closing Date Assigned Contracts; and (v) the receipt by the Debtors of the Purchase Price are in the best interests of the Debtors and their estates, creditors, and interest holders.

11984572_5.DOC

K.   Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.

L.   The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with as they are applicable to the transfer of the Purchased Assets and the assumption and assignment of the Closing Date Assigned Contracts by the Debtors to Buyer.

M.   The Debtors and/or Buyer have given due and proper notice of the proposed sale of the Purchased Assets to all parties required to receive notice, including without limitation, to each secured party, all holders of Encumbrances of record with respect to the Purchased Assets, all of the counterparties to the Closing Date Assigned Contracts, all municipalities and licensing agencies, and any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) having a claim against the Debtors or the Purchased Assets, and all entities reasonably known to have expressed an interest in a transaction with respect to the Purchased Assets during the past twelve months.

N.   A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Purchased Assets, has been afforded to all interested parties and entities.

O.   Except with respect to liabilities expressly assumed in the Asset Purchase Agreement, the Closing and the consummation of the transactions contemplated by the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition operation of the business of the Debtors or the postpetition operation of the business of the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors, and no common identity of incorporators, directors, or stockholders exists between the Buyer and the Debtors. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of

11984572_5.DOC

the Debtors' assets. The transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estate, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing, the Buyer shall be deemed to have assumed only the liabilities expressly assumed in the Asset Purchase Agreement. Except for those assumed liabilities, the Buyer's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Buyer's operation and use of the Purchased Assets acquired from the Debtors shall not be deemed a continuation of the Debtors' business. The Court finds that the Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

P.     Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the transactions contemplated thereby to be avoided or avoidable, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Buyer is not an "insider" or "affiliate" of the Debtors (as such terms are defined in the Bankruptcy Code).

Q.     As of the Closing under the Asset Purchase Agreement, Buyer or Seller will have paid cure amounts for the Closing Date Assigned Contracts, including the amounts relating to the period prior to the Petition Date as set forth on <u>Schedule A</u> hereto, or made adequate provision for the prompt cure of such defaults (including as provided in paragraph 2 of this Order with respect to the Ethypharm Contract), and Buyer has provided each of the counterparties to the

Closing Date Assigned Contracts with adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code. Therefore, no uncured default shall exist under the Closing Date Assigned Contracts, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default under the Closing Date Assigned Contracts. Upon assignment and sale to the Buyer, the Closing Date Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

R.      The cure amounts listed on Schedule A are the full and complete cure amounts due for existing defaults under the Closing Date Assigned Contracts arising on or prior to the Petition Date.

S.      Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement. Accordingly, the Court finds that there is cause to waive and/or vacate the stays imposed by Rules 6004(h) and 6006(d) of the Bankruptcy Rules, and such stays are hereby vacated and shall have no application to the relief afforded by this Order.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Sale Motion is hereby granted in all respects. All objections with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits; provided, that the objection of Ethypharm, S.A. ("Ethypharm") [Dkt. No. 318] (the "Ethypharm Objection"), with respect only to the cure amount due for assumption of the Ethypharm Contract, shall remain pending as provided in paragraph 2 of this Order. The

Asset Purchase Agreement, an executed copy of which was filed with the Court, is approved in all respects.

2. The Ethypharm Objection was withdrawn on the record at the Sale Hearing, except with respect to the amount of cure due to Ethypharm for assumption of the Ethypharm Contract pursuant to section 365 of the Bankruptcy Code (the "Ethypharm Cure Amount"). A hearing to determine the Ethypharm Cure Amount shall be held on October 28, 2009, at 9:30 a.m. (ET). The Debtors shall reserve $2,900,000 (the "Reserved Cure Amount") from the proceeds of the sale of the Purchased Assets at closing pending resolution or determination by the Court of the Ethypharm Cure Amount. The Reserved Cure Amount shall be used to pay the Ethypharm Cure Amount when fixed or determined by order of the Court, and the Debtors are authorized to use the proceeds (to the extent constituting cash collateral) to pay the Reserved Cure Amount in accordance with this paragraph.

3. The Debtors are hereby authorized, empowered, and directed, and, upon entry of this Order, have all the power and authority necessary to:

    a. Fully perform under, consummate, implement, execute, and deliver the Asset Purchase Agreement and all other documents contemplated thereby, to consummate the transactions contemplated by the Asset Purchase Agreement, and to take all other actions required to be taken pursuant to the Asset Purchase Agreement;

    b. Transfer the Purchased Assets to Buyer and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Purchased Assets to Buyer;

    c. Assume and assign the Closing Date Assigned Contracts effective upon

the Closing and upon the terms and conditions set forth in the Asset Purchase Agreement;

d. Receive the consideration described in the Asset Purchase Agreement from Buyer and take any action necessary to effectuate the receipt of such consideration; and

e. Fully perform and take all action necessary to effectuate the Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

4. No other or further consents or approvals of this Court are required for the Debtors to consummate or effectuate (i) the Asset Purchase Agreement, (ii) the transfer of the Purchased Assets, (iii) the assumption and assignment to Buyer of the Closing Date Assigned Contracts, and (iv) the receipt of consideration from Buyer.

5. Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to Buyer, and, upon the Closing under the Asset Purchase Agreement, the Purchased Assets shall be free and clear of any and all Encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtors' business, whether arising prior to or subsequent to the commencement of the Debtors' cases under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of any of these chapter 11 cases), and whether imposed by agreement, understanding, law, equity, or otherwise, which Encumbrances, if any, shall attach to the proceeds of the sale.

6. In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Closing Date Assigned Contracts to the Buyer, (i) the Buyer shall have all of the rights of the Debtors thereunder and each provision of such Closing Date Assigned Contracts

shall remain in full force and effect for the benefit of the Buyer notwithstanding any provision in any such Closing Date Assigned Contracts or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) neither the Closing Date Assigned Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the transaction contemplated by the Asset Purchase Agreement.

7.      Except as expressly permitted by the Asset Purchase Agreement and this Order, all persons or entities holding or asserting any Encumbrance of any kind or nature with respect to the Purchased Assets or business formerly conducted by the Debtors shall be, and hereby are, barred from asserting such Encumbrance against Buyer, its successors and assigns, or the Purchased Assets. All persons or entities in possession or control of any inventory or other Purchased Assets are hereby ordered and directed to deliver the same to Buyer and to look solely to the proceeds of the sale for satisfaction of any Encumbrances held by such persons or entities.

8.      Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Buyer or its successors and assigns with respect to any Encumbrance, other than with respect to Assumed Liabilities (as defined in the Asset Purchase Agreement). Without limiting the generality of the foregoing, Buyer shall have no liability for any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors or their directors, officers, or shareholders.

9.      Except as expressly provided in the Asset Purchase Agreement, the consummation of the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition or postpetition operation of the business of the Debtors

in any form or manner whatsoever, including, without limitation, by reason of any theory of successor or transferee liability, *de facto* merger, or substantial continuity, whether known or unknown and whether asserted or unasserted as of the Closing, including without limitation for any claims for rebates, refunds, returns, chargebacks or similar claims relating conduct of the Debtors' business by the Debtors prior to the Closing.

10. If any person or entity that has filed a financing statement or other documents or agreements evidencing an Encumbrance on the Purchased Assets shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases, and other documents to the Debtors prior to the Closing, then the Debtors and the Buyer shall be and hereby are authorized to execute such termination statements, instruments of satisfaction, releases, and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of Buyer, the Debtors, or any other party to execute, file, or obtain releases, termination statements, assignment consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Asset Purchase Agreement with respect to the sale of the Purchased Assets and the assumption and assignment of the Closing Date Assigned Contracts, all Encumbrances on the Purchased Assets and the Closing Date Assigned Contracts shall be and hereby are deemed to be divested, terminated, and discharged.

11. This Sale Order shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

11984572_5.DOC

other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. Each and every federal, state, and local governmental agency or department or office is hereby authorized to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the Asset Purchase Agreement.

12. The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code to (i) sell, assume, assign, and transfer to Buyer the Closing Date Assigned Contracts pursuant to the provisions of sections 363 and 365 of the Bankruptcy Code, free and clear of any and all Encumbrances, and (ii) execute and deliver to Buyer such assignment documents as may be necessary to sell, assign, and transfer the Closing Date Assigned Contracts.

13. On or before the Closing and as provided in the Asset Purchase Agreement, Buyer or the Debtors shall pay the amounts due, if any, on the Closing Date Assigned Contracts necessary to cure any existing default arising before, on, or after the Petition Date under the Closing Date Assigned Contracts or take such other action as will ensure the prompt cure of any such existing default. Other than payment of such amounts, if any, no other action needs to be taken with respect to any of the Closing Date Assigned Contracts in order for the Debtors to assume the Closing Date Assigned Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code.

14. The Closing Date Assigned Contracts shall, upon assumption and assignment to Buyer, be deemed to be valid and binding and in full force and effect and enforceable by Buyer in accordance with their respective terms. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved, from the date of its assignment, from any further liability with

11984572_5.DOC

respect to the Closing Date Assigned Contracts, other than the obligation to pay up to the Reserved Cure Amount when the Ethypharm Cure Amount is determined. Buyer shall not, as a result of such assignment, assume any liability under the Closing Date Assigned Contracts for events occurring prior thereto.

15. Notwithstanding any other provision of this Order to the contrary (including, without limitation, paragraphs 7 and 8 hereof), nothing herein shall be construed or interpreted to limit the rights of any third party (including Abbott Laboratories) to assert intellectual property claims, if any, that arise after the Closing Date against the Buyer and/or the Purchased Assets (including, without limitation, infringement claims), which relate to the Buyer's use of the Purchased Assets or sale of the Product.

16. The assumption and assignment of the Closing Date Assigned Contracts is conditioned upon the Debtors closing under the Asset Purchase Agreement.

17. The Debtors are hereby authorized, empowered, and directed, and, upon entry of the Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Asset Purchase Agreement and any transaction contemplated thereby. The Debtors shall cooperate with and take all actions reasonably requested by Buyer to effectuate the Asset Purchase Agreement and any transaction contemplated thereby.

18. All of the transactions and actions contemplated by this Order are properly authorized under sections 363 and 365 of the Bankruptcy Code.

19. The consideration provided by Buyer for the Purchased Assets (including the Closing Date Assigned Contracts) under the Asset Purchase Agreement is fair and reasonable,

and the result of open and competitive bidding, and may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

20. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and any agreements executed in connection therewith in all respects, including but not limited to, retaining jurisdiction (a) to compel delivery of the Purchased Assets (including the Closing Date Assigned Contracts) to Buyer; (b) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein; (c) to protect the Buyer, or the Purchased Assets, from and against any Encumbrances; and (d) to interpret, implement, and enforce the provisions of this Order.

21. The transactions contemplated by the Asset Purchase Agreement are undertaken by Buyer, in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good-faith purchaser, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

22. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their affiliates, and the successors and assigns of each of the foregoing, and any affected third parties, including all non-debtor parties to the Closing Date Assigned Contracts, notwithstanding conversion or dismissal of the Debtors' bankruptcy cases or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

11984572_5.DOC

23. The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

24. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Debtors and Buyer, and in accordance with the terms of the Asset Purchase Agreement, without further order of the Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the estates of the Debtors.

25. The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order. The Debtors irrevocably waive any right to seek any modification of this Order without the prior written consent of Buyer, and no such consent shall be implied by any other action, inaction, or acquiescence by Buyer.

26. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten days are hereby waived and this Order shall be effective, and the parties may consummate the transactions contemplated by the Asset Purchase Agreement, immediately upon entry.

27. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an order confirming any plan of reorganization

or liquidation of any of the Debtors or converting any of the Debtors' cases from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

28.    The Backup Bidder (as defined below) shall keep its Backup Bid (as defined below) open until the earlier of (a) 3 days after entry of this Order or (b) the closing of a sale of the Purchased Assets to the Buyer. If the Debtors determine that they are unable to close the sale of the Purchased Assets to the Buyer within 3 days of entry of this Order, the Debtors shall be authorized to designate the next highest and best offer for the Purchased Assets at the Sale Hearing (the "Backup Bid"), as submitted on the record by Akrimax Pharmaceuticals, LLC (the "Backup Bidder"), as the highest and best offer for the Purchased Assets. In such event, (a) for all purposes of this Order, the Backup Bidder shall be the "Buyer" under this Order and the Asset Purchase Agreement for the Backup Bid, as modified on the record at the Sale Hearing, shall be the "Asset Purchase Agreement" under this Order, and (b) the Debtors shall be authorized to close a sale of the Purchased Assets and to assume and assign the Ethypharm Contract and the Closing Date Assigned Contracts to the Backup Bidder in accordance with the terms and provisions of this Order, without need for further order of this Court.

29.    This Court shall retain jurisdiction over the parties to the Asset Purchase Agreement and the Closing Date Assigned Contracts with respect to any matters related to or arising under the Asset Purchase Agreement or under this Order.

Dated: September 22, 2009

_____
United States Bankruptcy Judge

11984572_5.DOC

## SCHEDULE A

**CLOSING DATE ASSIGNED CONTRACTS**

## SCHEDULE A

### Additional Assigned Contracts

| Counterparty | Title | Date | Notice Address | Type | Prepetition Cure Amount |
|---|---|---|---|---|---|
| AAI Pharma, Inc. | Master Services Agreement | 10/11/06 | 2320 Scientific Park Drive, Wilmington, NC 28405 | Contract | $20,000 |
| Brand Engineers, LLC | Services Agreement | 2/27/08 | 555 Route 1 South, 2nd Floor, Iselin, NJ 08830 | Contract | $0 |
| Cardinal Health PTS Inc. | Packaging Agreement | 10/30/02 (amended 5/12/05) | Packaging Group, 301 Red Lion Road, Philadelphia, PA 19114 | | $144,000 |
| Catalina Health Resource, LLC | Master Service Agreement | 2/13/09 | 200 Carillon Parkway, St Petersburg, FL 33716 | Contract | $67,500 |
| Healthcare Logistics, LLC, d/b/a Pharmagistics | Master Professional Services Agreement | 10/27/06 | 309 Pierce St., Somerset, NJ 08873 | Contract | $0 |
| Integrated Commercialization Solutions, Inc. | Commercial Outsourcing Services Agreement | 6/24/04 (amended 8/21/06, 5/1/07) | Integrated Commercialization Solutions, Inc., 4006 Beltline Road, Suite 100, Addison, Texas 75001, Attn: Vice President & General Manager, with a copy to: AmerisourceBergen Corporation, 1300 Morris Drive, Suite 100, Chesterbrook, PA 19087 | Contract | $30,799 |
| McKesson Specialty Arizona Inc. | Service Agreement | 3/28/07 | 4343 North Scottsdale Road, Suite 150, Scottsdale, AZ 85251 | Contract | $380,086 |

12187400_3.DOC